39742. STRICKLAND v. W. E. ROSS & SONS, INC.

SMITH, Justice.

This is a tax case interpreting OCGA § 48-8-39 (Code Ann. § 91A-4508). The question is whether one who sells at retail a small portion of industrial materials he has otherwise produced or manufactured for his own use will be subject to a sales or use tax on the fair market value of those materials he uses himself. The trial court found that such a person was not within the category of taxpayer described in the statute. We affirm.

Ross is a Georgia asphalt paving contractor and the major portion of its work is paving public highways for the state. For the purpose of fulfilling these contracts it has its own facilities for the production, transport, and installation of asphalt. Ross on occasion produces more asphalt than needed for its own purposes and sometimes sells this excess at retail to other parties on an "as available" basis. During the audit period involved in this case approximately 9% of Ross' total production was disposed of by retail sale. The parties agree that Ross employed no salesmen, did no advertising, lacked overnight asphalt storage facilities, fired up its production plant only to produce asphalt for its own use, required

buyers to pick up the purchased asphalt at its plant in their own trucks, and generally attempted to match production with estimates of the amount necessary for its own needs. Nonetheless, Ross made retail sales of asphalt in 33 of the 35 months between March 1977 and December 1979, some 47,000 tons with a value of $626,000.

In September 1980, the Department of Revenue issued two notices of assessment and demand for payment to Ross for sales and use tax deficiencies during the above period and also for January-February 1980. Ross appealed to the Revenue Commissioner pursuant to OCGA § 48-2-59 (Code Ann. § 91A-255). The appeal and necessary records were thereupon certified and transmitted by the Commissioner to the Irwin County Superior Court. Both parties moved for summary judgment on the issue of Ross' liability for the assessments, and the court concluded that: (1) Ross was not within the category of taxpayer described in OCGA § 48-8-39 (b) (Code Ann. § 91A-4508), and therefore was not subject to an assessment for use taxes under that statute, and (2) Ross operated primarily as a paving contractor during the period and therefore should be taxed as a contractor as provided by OCGA § 48-8-63 (a) (Code Ann. § 91A-4536) and Rules and Regs. of the State of Georgia § 560-12-2-.26 (1). Thus Ross' motion was granted and the notices of assessment were held null and void.

1. The issue here is whether Ross was properly found not to be "a person who engages in the business of processing, manufacturing, or converting industrial materials into articles of tangible personal property for sale," OCGA § 48-8-39 (b) (Code Ann. § 91A-4508).

The Department of Revenue has defined three pertinent classes of taxpayer pursuant to the Sales and Use Tax Act codified at OCGA § 48-8-1 et seq. (Code Ann. Chs. 91A-45, 91A-46, 91A-99). These taxpayers are classified according to the taxable transactions in which they engage and their classification determines at what point in the chain of commercial transactions, from distribution of raw material to consumption of a finished product, taxes are levied. "Dealers" are those who sell at retail tangible personal property on which the tax has not yet been paid. OCGA § 48-8-2 (3) (Code Ann. § 91A-4501). When such person sells the item of tangible personal property, sales tax liability accrues based on the sales price. Dealers are exempt from payment of sales tax on purchases of their inventory made for resale. OCGA § 48-8-3 (Code Ann. § 91A-4503).

"Contractors" are persons who contract to furnish tangible personal property and perform services thereunder in constructing or repairing real property and are deemed to be the consumer of such tangible personal property. Contractors must pay the sales tax on this tangible personal property at the time they purchase it. OCGA §

48-8-63 (Code Ann. § 91A-4536).

A "dual operator" is a Department of Revenue designation for a dealer in the business of selling tangible personal property who, in addition to selling at retail, withdraws tangible personal property from inventory for use in performing contracts. See *Ingalls Iron Works Co. v. Chilivis,* 237 Ga. 479 (228 SE2d 866) (1976).[1] A dual operator must collect and remit the tax on the sales price of the tangible personal property sold at retail and pay the tax on the fair market value of the tangible personal property used by him in performing a contract. When a dual operator makes purchases of tangible personal property, a part of which he will sell at retail and a part of which he will convert to his own use in performing a contract, he may furnish his supplier with a certificate of exemption and avoid payment of sales tax on purchases of his raw materials. OCGA § 48-8-38 (Code Ann. § 91A-4507).

The state contends that Ross is a dual operator because it purchases raw materials both for sale and for use in performing its own paving contracts. When a dual operator makes purchases of raw materials, he furnishes his supplier with a certificate of exemption entitling him to purchase the goods free of sales tax. Rules and Regulations of the State of Georgia § 560-12-1-.17 (3).

In the present case, Ross paid sales tax on the purchase of raw materials for its asphalt and collected sales tax on asphalt sold at retail, but did not pay sales tax on the fair market value of asphalt used in performing its own paving contracts. Ross at all times pertinent to this litigation considered itself a contractor and not a dual operator.

OCGA § 48-8-39 (b) (Code Ann. § 91A-4508) imposes a tax upon a person who "engages in the business of processing, manufacturing, or converting industrial materials into articles of tangible personal property for sale . . . [and] makes any use of the article . . . other than retaining, demonstrating, or displaying it for sale." Such use shall be deemed a retail sale as of the time the article is first used by the taxpayer. The state contends that Ross manufacturers asphalt for sale and is thus within this statute. It bases its conclusion on the undisputed fact that Ross has frequently sold asphalt at retail and derived income from such sales. The state argues that Ross therefore manufactured asphalt for sale, regardless of any initial intent to merely make asphalt for its own use. We disagree.

The facts here do not support the conclusion that Ross engages

---

[1] In *Ingalls* this court determined that OCGA § 48-8-39 (Code Ann. § 91A-4508) was constitutional and did not deny dual operators equal protection.

in the business of manufacturing asphalt for sale. Less than ten percent of the asphalt it makes is eventually sold at retail. Ross is engaged in only one kind of business enterprise, asphalt paving contracting. It is not, by virtue of these insignificant retail sales, transformed into a person in the business of supplying asphalt to ordinary purchasers. The clear intent of OCGA § 48-8-39 (Code Ann. § 91A-4508) is to capture tax revenues by creating a fictional "sale" where the manufacturer of an item elects to use it himself rather than sell it in the normal course of his retail business. Ross does not normally engage in the business of manufacturing asphalt for retail sale, but instead is in the business of laying down asphalt made by it for this purpose. We reach this conclusion after considering several other factors beyond Ross's intention in making asphalt and the small amount sold at retail. There is no evidence that Ross solicited sales of asphalt, fired up its plant for any purpose other than to produce asphalt for its own use, accomodated purchasers by providing specific grades or mixtures on demand, made or aided in any deliveries, advertised its product, maintained inventories, or otherwise sought to encourage or develop a retail sales business apart from its own contracting enterprise. For these reasons we affirm the trial court's decision that Ross is not within the category of taxpayer contemplated by OCGA § 48-8-39 (b) (Code Ann. § 91A-4508) and therefore is not subject to an assessment for sales and use taxes under that statute.

2. The state also contends that it was error to grant full summary judgment in favor of Ross when there remained a second issue not involving interpretation of OCGA § 48-8-39 (Code Ann. § 91A-4508). The record shows that the trial court's order addresses only the issue of whether Ross was a dual operator and we therefore assume that the second issue remains pending in the court below. The judgment affirmed in this opinion decides the question involving OCGA § 48-8-39 (b) (Code Ann. § 91A-4508) and no other.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., Weltner and Bell, JJ., who dissent.*

DECIDED JULY 7, 1983 —
REHEARING DENIED JULY 22, 1983.

*Michael J. Bowers, Attorney General, Warren R. Calvert, Assistant Attorney General,* for appellant.

*Walters, Davis, Smith & Meeks, W. Edward Meeks, Jr., Hall, Bloch, Garland & Meyer, J. Patrick Meyer, Jr., J. Steven Stewart,* for appellee.

WELTNER, Justice, dissenting.

The majority acknowledges that within a period of less than three years, Ross sold at retail asphalt manufactured by it for a total sales price of $626,000. Yet, the majority finds that "[t]he facts here do not support the conclusion that Ross engages in the business of manufacturing asphalt for sale. Less than ten percent of the asphalt it makes is eventually sold at retail." Opinion, pp. 326-27.

The statute contains no *de minimis* exception to the provisions of OCGA § 48-8-39 (b) (Code Ann. § 91A-4508) — if, indeed, sales totalling nearly two-thirds of a million dollars might be deemed as insignificant.

Unquestionably, Ross processes industrial materials for sale, and regularly uses its products in its own endeavors. Accordingly, "the use shall be deemed a retail sale as of the time the article is first used by him and its fair market value at the time shall be deemed the sale price of the article." OCGA § 48-8-39 (b) (Code Ann. § 91A-4508).

It is stipulated that Ross paid sales tax upon raw materials purchased by it. That, however, is no cause for granting the exemption which the majority accords to Ross, as dual operators are entitled to purchase goods free of sales tax under a certificate of exemption. Rules and Regulations of the State of Georgia § 560-12-1-.17 (3).

What happens in the *next* case — when sales are 11% of production, or 18%, or 23%? What happens when sales (as in this case) are 9% of production, but achieved through aggressive marketing?

I am authorized to state that Presiding Justice Marshall and Justice Bell concur in this dissent.